DONALD J. WRINN *v.* GEORGE DUNLEAVY ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued October 16, 1981—decision released February 2, 1982

*Louis S. Votto,* with whom was *Dennis J. Donahue, Jr.,* for the appellant (plaintiff).

*William F. Gallagher,* for the appellee (named defendant).

*Robert E. Reilly,* corporation counsel, for the appellees (defendants Howard et al.).

SPEZIALE, C. J. This appeal concerns a contested Democratic party primary election in the city of West Haven and comes before this court pursuant to the expedited review procedure provided by § 9-325 of the General Statutes. Because of the expeditious nature of the proceedings, on October 16, 1981, this court announced from the bench its decision[1] that a new primary be conducted at a time to be determined by a judge of the Superior Court, with further opinion to be filed in due course.

## I

### BACKGROUND

On September 8, 1981, a Democratic party primary election was held in the city of West Haven. The plaintiff, Donald J. Wrinn, and the named

---

[1] The decision announced from the bench was: "There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff, ordering a new primary to be held forthwith, at a time to be fixed by a judge of the Superior Court, between the plaintiff and the named defendant for the Democratic nomination for mayor of the city of West Haven. A further opinion will be filed in due course."

defendant, George Dunleavy, were the candidates for the party's nomination for the office of mayor. In the official count of the votes on September 8, and in a recanvass on September 13, both certified by the head moderator, the named defendant prevailed over the plaintiff by eight votes: 2847 to 2839.

On September 11, 1981, the plaintiff initiated the present action pursuant to § 9-329a of the General Statutes.[2] Section 9-329a provides, in relevant part, that any candidate "aggrieved by a ruling of an

[2] "[General Statutes] Sec. 9-329a. (Formerly Sec. 9-449). RESOLUTION OF COMPLAINTS IN CONNECTION WITH ANY PRIMARY. Any elector or candidate aggrieved by a ruling of an election official in connection with any primary as provided in sections 9-423, 9-424, 9-425 or 9-464 or who alleges that there has been a mistake in the count of the votes cast at such primary, may bring his complaint to any judge of the superior court for appropriate action. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint. If such complaint is made subsequent to such primary it shall be brought, within three days after such primary, to any judge of the superior court. Such judge shall forthwith order a hearing to be held upon such complaint upon a day not more than five nor less than three days after the making of such order, and shall cause notice of not less than three days to be given to any candidate or candidates in any way directly affected by the decision upon such hearing, to such election official and to any other person or persons, whom such judge deems proper parties thereto, of the time and place of the hearing upon such complaint. Such judge shall, on the day fixed for such hearing, and without delay, proceed to hear the parties and determine the result. If, after hearing, sufficient reason is shown, such judge may (a) order any voting machine used at such primary to be opened and a recount made of the votes cast; (b) order a new primary held at such time as he may fix if he finds that but for the improper actions of the election official the result of such primary might have been different and that by utilizing the procedure set out in subsection (c) he would be unable to determine the result of such primary or; (c) determine the result of such primary if he finds that the improper actions of the election official prevented persons entitled to vote from voting at such primary and after allowing such persons to vote by sealed paper ballot, he finds the results of such primary will be different. Such judge shall forthwith prepare a finding of the result of such hearing and his order thereon and shall file the same with the clerk of the

election official in connection with any primary . . . or who alleges that there has been a mistake in the count of the votes cast at such primary, may bring his complaint to any judge of the superior court for appropriate action." The plaintiff's amended complaint, which named as defendants George Dunleavy and various election officials,[3] also contained two additional counts not based on § 9-329a, but because of the way this case has been appealed, the trial judge's treatment of those counts is not now before this court.[4]

On September 11, 1981, pursuant to § 9-329a, the defendants were ordered by Judge Hadden to appear for a hearing on September 16, 1981. The hearing was conducted by Judge Norcott. At issue was the propriety of the handling of certain absentee ballots. On September 18, 1981, the parties agreed to a stipulation of the facts regarding these absentee ballots. This stipulation, as reported by the trial judge in his memorandum of decision, was as follows:

---

court. Such finding and order shall operate to correct any returns or certificates filed by the election officials and shall be final and conclusive, unless the same is appealed from as provided in section 9-325. In the event a new primary is held pursuant to such superior court order, the result of such new primary shall be final and conclusive unless a complaint is brought pursuant to this section. The clerk of the court shall forthwith transmit a copy of such findings and order to the secretary of the state."

[3] The other defendants are: William Howard, head moderator; Albert Forte, city clerk; Emmett McDonough, Democratic registrar of voters; Julius Paecht and Earl Predom, Jr., absentee ballot counters.

[4] The plaintiff's second count, alleging aggrievement due to improper conduct and prohibited acts by agents acting for the named defendant, was "disregarded" by the trial judge because there was "no support in the evidence." The third count, seeking a declaratory judgment pursuant to § 52-29 of the General Statutes, was also not resolved by the trial judge, apparently because the merits of the case were reached through the count arising under § 9-329a.

"(1) Florence Corradino, a resident of 200 Oak Street, known as 'Surfside 200,' an elderly high-rise within the Second Voting District in West Haven, mailed 26 absentee ballots from physically disabled or ill electors residing at that complex.

"(2) Florence Corradino, upon receipt of the 26 ballots, mailed them by placing them in a mailbox located immediately outside the outer door of Surfside 200.

"(3) Of the 26 absentee ballots mailed, cast and counted all were votes for the defendant George Dunleavy. [See footnote 5, infra.]

"(4) At the time of the mailing Mrs. Corradino was not an election official, a physician, nurse, person caring for the health of the persons whose ballots she mailed, nor was she any of the specially designated persons defined in Connecticut General Statutes, § 9-146(b).

"(5) Florence Corradino held no official capacity in the primary election."[5]

Under this stipulation, the principal question below was whether the twenty-six absentee ballots were properly mailed and, thus, were properly counted. The trial judge found that "[b]ut for the counting of the aforementioned 26 absentee ballots . . . the plaintiff would have won the primary election." Section 9-146(b) of the General Statutes expressly deals with the situation where an elector

---

[5] The transcript of the September 18, 1981, hearing indicates that the parties actually agreed that twenty-five of the twenty-six absentee ballots were cast for the named defendant, the remaining one being cast for the plaintiff. This discrepancy is immaterial to the trial judge's decision and to the issues before this court; however, the trial judge's eighth finding of fact correctly indicates how the twenty-six absentee ballots in question were cast.

does not personally mail his or her absentee ballot. This section provides: "In the case of an elector who cast an absentee ballot because of illness or physical disability, such ballot shall only be mailed by such elector or by any person designated by such elector who consents thereto. Such elector may designate for such purpose only one of the following persons: A licensed physician, registered or practical nurse or any other person who is caring for such elector because of such elector's illness or physical disability, a member of such elector's family or, if no such person consents or is available, then a police officer, registrar of voters or deputy registrar of voters in the municipality in which such elector resides."

On September 25, 1981, the trial judge rendered judgment for the defendants. The trial judge held that although there had been deficiencies in complying with § 9-146 by the twenty-six absentee voters, there had been "substantial compliance" with the requirements for the casting of the absentee ballots. As a result, the trial judge denied the plaintiff's prayers for relief.

On September 30, 1981, the plaintiff, pursuant to General Statutes § 9-325,[6] applied to the trial judge

---

[6] "[General Statutes] Sec. 9-325. APPEALS AND RESERVATIONS OF LAW TO BE TAKEN TO SUPREME COURT. If, upon any such hearing by a judge of the superior court, any question of law is raised which any party to the complaint claims should be reviewed by the supreme court, such judge, instead of filing the certificate of his finding or decision with the secretary of the state, shall transmit the same, including therein such questions of law, together with a proper finding of facts, to the chief justice of the supreme court, who shall thereupon call a special session of said court for the purpose of an immediate hearing upon the questions of law so certified. A copy of the finding and decision so certified by the judge of the superior court, together with the decision of the supreme court, on the questions of law therein certified, shall be attested by the clerk of the

for the certification of a question of law for expedited review by this court. The judge certified the plaintiff's question of law on September 30, together with his findings and order, and transmitted the same to the Chief Justice as required by the statute. On October 1, 1981, the judge certified three questions of law raised by the defendants. An expedited briefing schedule was established by this court and oral argument was held on October 16, 1981.

On October 5, 1981, the plaintiff filed a separate, direct appeal from the judgment rendered against him, raising certain issues not contained within the certified questions of law.[7] No cross-appeal was filed by the defendants. The plaintiff's direct appeal has not been heard by this court.[8] In view of this court's decision for the plaintiff on the merits as raised by expedited review under § 9-325, the separate appeal of the plaintiff is hereby dismissed as moot.

supreme court, and by him transmitted to the secretary of the state forthwith. The finding and decision of the judge of the superior court, together with the decision of the supreme court on the questions of law thus certified, shall be final and conclusive upon all questions relating to errors in the rulings of the election officials and to the correctness of such count and shall operate to correct the returns of the moderators or presiding officers so as to conform to such decision of said court. Nothing in this section shall be considered as prohibiting an appeal to the supreme court from a final judgment of the superior court. The judges of the supreme court may establish rules of procedure for the speedy and inexpensive hearing of such appeals within fifteen days of such judgment of a judge of the superior court."

[7] The plaintiff's preliminary statement of issues on appeal questions whether a declaratory judgment action may be used to challenge the results of a primary. Because of the nature of the expedited review procedure under § 9-325, this question cannot be raised in this court by certification.

[8] On October 14, 1981, this court dismissed as moot the plaintiff's motion for expedited consideration of the separate appeal because the merits of the case were already scheduled to be heard on the expedited review under § 9-325.

## II

### NATURE OF REVIEW

The first matter which this court must consider is the nature of our review under § 9-325. Section 9-329a expressly provides that any decision thereunder may be "appealed from as provided in section 9-325." Section 9-325, entitled "Appeals and reservations of law to be taken to supreme court," provides, in relevant part, that if, after the required hearing, "any question of law is raised which any party to the complaint claims should be reviewed by the supreme court," the Superior Court judge "shall transmit [his finding or decision], including therein such questions of law, together with a proper finding of facts, to the chief justice of the supreme court . . . ." The Chief Justice "shall thereupon call a special session of said court for the purpose of an immediate hearing upon the questions of law so certified."

This court has dealt with such a review (§ 9-325) on only one previous occasion. See *In re Henry T. Blake*, 77 Conn. 595, 60 A. 292 (1905). In *Blake* the complainant, claiming aggrievance by a moderator's rejection of his ballot, sought review of certain questions of law related to his complaint under an early version of § 9-325. This court dismissed the case on jurisdictional grounds because the certified questions of law had not been decided below and there was, consequently, nothing for the Supreme Court to "review." Id., 598. *Blake* clearly established that the certified questions of law are not "reserved" for Supreme Court consideration but rather come before the court only for review of the decision reached by the trial judge. See Maltbie, Conn. App. Proc. §§ 231-34, 236.

The review procedure provided by § 9-325 differs significantly from the standard appeal under § 52-263 of the General Statutes and §§ 3000 et seq. of the Practice Book. This is because of the expedited nature of the procedure challenging election and primary results. Section 9-329a, for example, requires the original complaint to be brought within *three days* of the primary challenged, the hearing required by the statute is to be conducted within *three to five days* after it is ordered, and the trial judge is to render a decision "without delay." The legislature enacted § 9-325 so that this court would expeditiously decide what § 9-329a itself describes as an "appeal" of the trial judge's expedited decision.

The expedited review provided by § 9-325, irrespective of its unusual procedural features, is in substance an appeal, as in fact it is described in the statutes to which it is applicable. See General Statutes §§ 9-324, 9-328, 9-329a. The questions of law raised by a party under § 9-325 parallel the statement of issues which a party raises on appeal. See Practice Book § 3012. The certification of these questions, together with the judge's decision thereon, operates to invoke the appellate jurisdiction of this court, much as an appeal from a final judgment.[9] See Practice Book § 3000. Of course, even in a standard appeal, this court reviews only properly preserved questions of law. See General Statutes § 52-263; Practice Book § 3000. The appellate authority of this court is the same in a review

---

[9] The expedited review under § 9-325 may be invoked irrespective of whether final judgment has been rendered; however, the review may not be obtained until the trial judge has made the necessary factual findings and has reached a decision on the questions of law presented.

under § 9-325 as in an appeal under § 52-263; however, the expedited review proceeding under § 9-325 may deal only with questions of law arising under the statutory provisions by which the § 9-325 review may be invoked.[10]

The conclusion that the expedited review proceeding of § 9-325 is, in effect, an expedited appeal may seem to be inconsistent with the last two sentences of § 9-325 which state: "Nothing in this section shall be considered as prohibiting an appeal to the supreme court from a final judgment of the superior court. The judges of the supreme court may establish rules of procedure for the speedy and inexpensive hearing of such appeals within fifteen days . . . ." It is clear, however, that the last two sentences of § 9-325, which were added to the statute in 1978 by Public Acts 1978, No. 78–125, § 10, are not intended to indicate that the review proceeding is not an appeal but rather are intended to indicate that the expedited review procedure provided by § 9-325 is not the exclusive method of seeking review of the decision of a trial judge in an election case.[11]

---

[10] The expedited review provided by § 9-325 may be invoked to obtain review of decisions on complaints brought under §§ 9-324, 9-328, and 9-329a. It is not sufficient, however, that the plaintiff allege or even that the parties agree that the complaint is brought pursuant to one of these sections, because the review provided by § 9-325 is available only when the original complaint actually states a cause of action cognizable under §§ 9-324, 9-328, or 9-329a. Such a complaint must concern a ruling of an election official or a mistake in the count of votes. Id. A plaintiff may not use these sections to challenge a law or regulation under which the election or primary election is held by claiming aggrievement in the election official's obedience to the law. In such a case the plaintiff may well be aggrieved by the law or regulation, but he or she is not aggrieved by the election official's rulings which are in conformity with the law.

[11] *In re Henry T. Blake*, 77 Conn. 595, 600, 60 A. 292 (1905), which held otherwise, is no longer the law because of the 1978 amendment to § 9-325.

Thus, in a case such as the present one, where a final judgment has been rendered below, the aggrieved parties would be able to use both methods, as the plaintiff has in fact done. The two appeals would normally be consolidated or, as with the present case, one of the appeals would be moot once the other is heard by this court. The method to be used by a party with access to both would generally depend on the questions that the party wanted to present to this court. As previously noted, the questions of law are limited under the expedited review procedure of § 9-325; however, the issues on an appeal are not so limited and may include any issues arising from the final judgment, including issues outside the election statutes, such as, for example, the availability of a declaratory judgment as a remedy in election disputes.[12]

In view of the foregoing, this court now turns to the certified questions of law raised by the parties to determine whether the trial judge erred in answering those questions as he did.

### III

#### THE DEFENDANTS' QUESTIONS

Before this court may reach the merits of the present appeal as raised by the plaintiff's certified question of law, we must first consider the three certified questions of law raised by the defendants. These threshold questions arise from three motions to dismiss made during the proceedings below which

---

[12] Section 9-325 provides this court with authority to "establish rules of procedure for the speedy and inexpensive hearing of such appeals within fifteen days of . . . judgment . . . ." This court has not considered it necessary to promulgate any new rules because under our present rules any such appeal may proceed upon a motion for expedited appeal.

were decided against the defendants. An affirmative answer to any of these questions would make it unnecessary for this court to reach the plaintiff's question.

## A

The first of the defendants' questions certified by the trial judge is:

"In a statutory proceeding under § 9-329a of the General Statutes, must the judge issuing the order for the hearing personally conduct it? If so, does the conduct [sic] of the hearing by another judge warrant the dismissal of the proceedings?"

This question arises because one judge, Judge Hadden, ordered the hearing on the plaintiff's complaint under § 9-329a and another judge, Judge Norcott, conducted the hearing. The statutory language in question states that a complaint such as the plaintiff's is to be brought directly "to any judge of the superior court," that "[s]uch judge" shall order a hearing, and that "[s]uch judge" shall conduct the hearing. The defendants contend that the failure to adhere to the statutory scheme requires the dismissal of the case on jurisdictional grounds.[13] We conclude that there was compliance with the statute.

The particular language of § 9-329a in question was adopted only recently, in 1978 by Public Acts

---

[13] The gist of the defendants' claim is that an action under a statute such as § 9-329a is not heard under the judicial power of the Superior Court but under a statutory mandate which calls upon a judge of the Superior Court to sit as a special tribunal on the dispute and that consequently the power to act on the complaint resides only in the judge to whom the complaint was brought. See, e.g., *Salter* v. *Kaplowitz*, 28 Conn. Sup. 85, 88–89, 250 A.2d 327 (1968).

1978, No. 78-125, § 12. Prior to the 1978 amendment, the statute, then § 9-449 of the General Statutes, provided that the complaint be brought to "any judge of the superior court," that "such judge" shall order the hearing and that "[s]uch judge or, *in case of his inability, a judge designated by the chief justice of the supreme court*" shall conduct the hearing. (Emphasis added.) Thus, prior to the 1978 amendment, the defendants' contention would have had merit. The earlier version of the statute intended that the judge who issued the order for the hearing would also conduct it, as indicated by the specified mechanism for replacing that judge. In 1978, however, the legislature amended the language in question and deleted the express replacement mechanism.

Because the present statute only mentions "such judge," it must be read to refer to "any judge of the superior court" and not to the specific judge to whom the complaint was originally brought. Furthermore, § 51-189 provides that when "any application, petition or matter" is presented to or pending before any judge of the Superior Court, that judge may designate any other Superior Court judge to hear the case or transfer the case to such judge. When this is done the other judge is to proceed "with the same authority as though the same had originally been presented to him or had theretofore been pending before him."

Therefore, as to the defendants' first certified question of law, there was no error in one judge's issuing the order for the required hearing and another judge's conducting it.

## B

The second of the defendants' certified questions of law is:

"In a statutory proceeding under § 9-329a, must the alleged misconduct relied on be by an 'election official.' If so, is the alleged misconduct by a person other than an 'election official' within the purvue [sic] of the statute?"

The defendants contend that with regard to a primary election dispute § 9-329a is limited to disputes concerning the propriety of the actions of election officials and the arithmetic tabulation of the votes. Thus, according to the defendants, because the present dispute does not concern either the activity of an election official or the tabulation of the votes, the plaintiff's complaint should have been dismissed. The trial judge rejected this reasoning and held that the plaintiff's complaint was properly brought under § 9-329a.

Section 9-329a provides that a candidate such as the plaintiff may bring a complaint thereunder if the candidate either is "aggrieved by a ruling of an election official in connection with any primary"[14] or "alleges that there has been a mistake in the count of the votes cast at such primary." The plaintiff's complaint is based on the casting of twenty-

---

[14] This language was added to § 9-329a in 1978 by Public Acts 1978, No. 78-125, § 12. This amendment deleted the following language from the statute, then § 9-449: Any "person claiming to have been elected at a primary and not declared to be so elected; any person claiming that except for the *improper action* of an election official or officials he would have been so elected and any enrolled member of a political party aggrieved by the ruling or claiming an *improper action* by any election official at a primary of such party . . . ." (Emphasis added.)

six absentee ballots which, according to the plaintiff, were void because they were improperly mailed. Thus, because the plaintiff would have won the primary had these ballots not been counted, he clearly is aggrieved by the ruling of an election official, such "ruling" being the counting of the absentee ballots.

Therefore, as to the defendants' second certified question of law, we hold that the plaintiff's complaint was properly brought under § 9-329a.

## C

The third of the defendants' certified questions of law is:

"In a statutory proceeding under § 9-329a of the General Statutes, must notice of the proceeding and hearing be given to the under-ticket in a mayoral primary election as 'candidates in any way directly affected by the decision upon such hearing?' If so, does the failure to serve or notice the under-ticket in the instant action warrant dismissal of the proceeding?"

This question arises because the primary in dispute involved not only the nomination for mayor but also nominations for seats on the board of education, the board of tax review, and the town council. Notice of the hearing conducted by the trial judge was not provided to any of the candidates for those nominations. It is the defendants' contention that the plaintiff's action must be dismissed because of this want of notice.[15]

[15] During the hearing below the defendants raised a similar objection to the third count of the plaintiff's amended complaint seeking a declaratory judgment. Because the plaintiff's third count is not before this court, we have no occasion to consider the propriety of the notice provided for that part of the plaintiff's complaint.

Section 9-329a provides that for any proceeding held thereunder the Superior Court judge who orders the hearing "shall cause notice of not less than three days to be given to any candidate or candidates in any way *directly affected by the decision* upon such hearing, to such election official [from whose ruling the plaintiff claims aggrievement] and to any other person or persons, whom such judge deems proper parties thereto, of the time and place of the hearing . . . ." (Emphasis added.) The statute does not require that all candidates in the contested primary be noticed, as it easily could have done. Notice is required to be given only to those candidates "directly affected by the decision."

In the present case the dispute is restricted to the validity of twenty-six specific absentee ballots. The certified results of the West Haven Democratic party primary reveal that all races in the primary, with the exception of that for the nomination for mayor, were decided by more than twenty-six votes. Because of this the trial judge found that there was "no evidence that the 26 absentee ballots in question directly affected any candidate other than those party to this instant action." In view of this finding, not disputed by any of the parties, this court must conclude that there was no error in the notice given of the complaint brought pursuant to § 9-329a. Cf. *Lobsenz* v. *Davidoff*, 182 Conn. 111, 116, 438 A.2d 21 (1980). The defendants' contention that the other candidates would be affected by a new primary is without merit because the new primary ordered by this court is to be held only between the named parties.

Therefore, as to the defendants' third certified question of law, we conclude that the notice of the proceeding complied with § 9-329a.

## IV

### THE PLAINTIFF'S QUESTION

The plaintiff's question of law, as certified by the trial judge, is:

"Did the judge err in concluding that elderly electors, casting absentee ballots because of illness or physical disability, substantially complied with mandatory mailing requirements of section 9-146 (b) of the Connecticut General Statutes, when their ballots were mailed by a person other than persons specifically designated by such statute?"

The plaintiff contends that there has not been substantial compliance with the mailing requirements of § 9-146 (b), supra, and that, therefore, the ballots in question must be invalidated. The defendants, on the other hand, maintain that, in the absence of any showing of fraud, there was substantial compliance. In the alternative, the defendants maintain that the question of substantial compliance need not be reached because the mailing provisions of the statute should be viewed as directory rather than mandatory.

This court acknowledges and concurs in the reluctance with which courts invalidate ballots, because such action effectively disfranchises the voters involved. " ' "Where the legislature in express terms says that a ballot shall be void for some cause, the courts must undoubtedly hold it to be void; but no voter is to be disfranchised on a doubtful construction, and statutes tending to limit

the exercise of the ballot should be liberally construed in his favor. Unless a ballot comes clearly within the prohibition of some statute it should be counted, if from it the wish or will of the voter can be ascertained." ' " *Dombkowski* v. *Messier,* 164 Conn. 204, 207, 319 A.2d 373 (1972); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 77, 230 A.2d 36 (1967); *Scully* v. *Westport,* 145 Conn. 648, 651–52, 145 A.2d 742 (1958); *State* v. *Bossa,* 69 Conn. 335, 341, 37 A. 977 (1897). But the right to vote is not absolute and is subject to regulation by the legislature. *Mills* v. *Gaynor,* 136 Conn. 632, 636, 73 A.2d 823 (1950). See generally General Statutes, Title 9.

In this case we are concerned with absentee voting—a special type of voting procedure established by the legislature for those otherwise qualified voters who for one or more of the authorized reasons are unable to cast their ballots at the regular polling place. See General Statutes §§ 9-135, 9-133a.[16] We have previously recognized "that

[16] "[General Statutes] Sec. 9-135. ABSENTEE VOTING BY CIVILIANS. Any elector who is unable to appear at his polling place during the hours of voting of any state, municipal or special election, (1) because of absence from the state during all of the hours between the opening of the polls in the town of his voting residence in the morning and the closing thereof in the evening of the day of such election, or (2) because of absence from the town of his voting residence during all of such hours because of his status as a student in a college, university, nurses' training school or any other institution of higher learning located within this state other than such town of his voting residence, or because he is the spouse of, and lives with, such a student, or (3) because of absence from the town of his voting residence during all of such hours because he has a temporary place of abode in a town other than the town of his voting residence as a result of his membership in a religious community, or (4) because of illness, or (5) because of physical disability, or (6) because the tenets of his religion forbid secular activity, or (7) because of absence from the town of his voting residence during all of such hours as a result of his confinement in a correctional facility

there is considerable room for fraud in absentee voting and that a failure to comply with the regulatory provisions governing absentee voting

in a town other than the town of his voting residence, provided his privileges as an elector are not forfeited, may cause his vote to be cast at such election, in the manner and subject to the conditions hereinafter stated."

"[General Statutes] Sec. 9-133a. ELIGIBILITY FOR ABSENTEE VOTING. Any elector who is entitled to vote in a primary of a party under section 9-431 and who is unable to appear at his polling place during the hours of voting at any primary of such party to be held in any municipality or such political subdivision thereof because of (1) being in active service with the armed forces of the United States, or (2) absence from the state during all of the hours of voting at such primary, or (3) absence from the town of his voting residence during all of such hours because of his status as a student in a college, university, nurses training school, or any other institution of higher learning located within this state other than such town of his voting residence or because he is the spouse of, and lives with, such a student, or (4) because of absence from the town of his voting residence during all of such hours because he has a temporary place of abode in a town other than the town of his voting residence because of membership in a religious community, or (5) because of illness, or (6) because of physical disability, or (7) because the tenets of his religion forbid secular activity, or (8) because of absence from the town of his voting residence during all of such hours because of his confinement in a correctional facility in a town other than the town of his voting residence, provided his privileges as an elector are not forfeited, may cause his vote to be cast at such primary in the manner and subject to the conditions hereinafter stated."

These sections have been amended by Public Acts 1981, No. 81-238 as follows: "AN ACT PERMITTING ABSENTEE VOTING BY PERSONS WHO ARE ABSENT FROM THE TOWN OF THEIR VOTING RESIDENCE ON THE DAY OF A PRIMARY OR AN ELECTION.

"Section 1. Section 9-133a of the general statutes is repealed and the following is substituted in lieu thereof:

"Any elector who is entitled to vote in a primary of a party under section 9-431 and who is unable to appear at his polling place during the hours of voting at any primary of such party to be held in any municipality or such political subdivision thereof because of (1) being in active service with the armed forces of the United States, or (2) absence from the [state] TOWN OF HIS VOTING RESIDENCE during all of the hours of voting at such primary, or (3) [absence from the town of his voting residence during all of such hours because of his status as a student in a college, university,

increases the opportunity for fraud." *Dombkowski* v. *Messier,* supra, 209. In *Flanagan* v. *Hynes,* 75 Conn. 584, 588, 54 A. 737 (1903), we stated "[i]f there is to be disfranchisement, it should be because

nurses training school, or any other institution of higher learning located within this state other than such town of his voting residence or because he is the spouse of, and lives with, such a student, or (4) because of absence from the town of his voting residence during all of such hours because he has a temporary place of abode in a town other than the town of his voting residence because of membership in a religious community, or (5)] because of illness, or [(6)] (4) because of physical disability, or [(7)] (5) because the tenets of his religion forbid secular activity [, or (8) because of absence from the town of his voting residence during all of such hours because of his confinement in a correctional facility in a town other than the town of his voting residence, provided his privileges as an elector are not forfeited], may cause his vote to be cast at such primary [in the manner and subject to the conditions hereinafter stated] BY ABSENTEE BALLOT.

"Sec. 2. Section 9-135 of the general statutes is repealed and the following is substitued in lieu thereof:

"Any elector who is unable to appear at his polling place during the hours of voting of any state, municipal or special election, (1) because of abesence from the [state] TOWN OF HIS VOTING RESIDENCE during all of the hours between the opening of the polls in [the] SUCH town [of his voting residencel] in the morning and the closing thereof in the evening of the day of such election, or (2) [because of absence from the town of his voting residence during all of such hours because of his status as a student in a college, university, nurses' training school or any other institution of higher learning located within this state other than such town of his voting residence, or because he is the spouse of, and lives with, such a student, or (3) because of absence from the town of his voting residence during all of such hours because he has a temporary place of abode in a town other than the town of his voting residence as a result of his membership in a religious community, or (4)] because of illness, or [(5)] (3) because of physical disability, or [(6)] (4) because the tenets of his religion forbid secular activity [, or (7) because of absence from the town of his voting residence during all of such hours as a result of his confinement in a correctional facility in a town other than the town of his voting residence, provided his privileges as an elector are not forfeited], may cause his vote to be cast at such election [, in the manner and subject to the conditions hereinafter stated] BY ABSENTEE BALLOT."

the legislature has seen fit to require it in the interest of an honest suffrage, and has expressed that requirement in unmistakable language."

In view of the express language of the absentee voting chapter and this court's decision in *Dombkowski* v. *Messier,* supra, there is no question that the provisions of § 9-146[17] and specifically the mailing requirements of § 9-146 (b) are mandatory. The

[17] "[General Statutes] Sec. 9-146. CASTING OF ABSENTEE BALLOTS, PRESIDENTIAL BALLOTS AND OVERSEAS BALLOTS. POSSESSION OF BALLOTS RESTRICTED. (a) An absentee ballot shall be cast at any election only if: (1) It is mailed by the elector so that it is received by the clerk of the municipality in which he is qualified to vote not later than the close of the polls on the day of such election; (2) it is returned by the elector in person to said clerk by the day before such election; (3) in the case of a presidential ballot, it is mailed or otherwise returned pursuant to the provisions of section 9-158g; or (4) in the case of an overseas ballot, it is mailed or otherwise returned pursuant to the provisions of section 9-159g.

"(b) In the case of an elector who cast an absentee ballot because of illness or physical disability, such ballot shall only be mailed by such elector or by any person designated by such elector who consents thereto. Such elector may designate for such purpose only one of the following persons: A licensed physician, registered or practical nurse or any other person who is caring for such elector because of such elector's illness or physical disability, a member of such elector's family or, if no such person consents or is available, then a police officer, registrar of voters or deputy registrar of voters in the municipality in which such elector resides.

"(c) No person shall have in his possession any official absentee ballot or ballot envelope for use at any election or primary except the elector to whom it was issued, the secretary of the state or his or her authorized agents, any official printer of absentee ballot forms and his designated carriers, the United States Postal Service, any other carrier designated by the secretary of the state for the purpose of delivering official blank absentee ballot forms to municipal clerks, any person authorized by a municipal clerk to receive and process official absentee ballot forms on behalf of such municipal clerk, any authorized election official or any other person authorized by any provision of the general statutes to possess such ballot or ballot envelope. No absentee ballot forms shall be issued to an applicant therefor on the day of an election, except as provided in section 9-158c."

statutory provisions authorizing absentee voting at elections and primaries both state that such voting shall take place "in the manner and subject to the conditions hereinafter stated." General Statutes §§ 9-135, 9-133a, supra. By its own terms § 9-146(a), in relevant part, unequivocally states: "An absentee ballot *shall be cast* at any election *only if*" the mailing requirements are fulfilled. (Emphasis added.) Section 9-146 (b) provides that the ballot of an ill or disabled elector "shall only be mailed" by the elector or by a designated person who may be "only one" of the persons on a specified list.

Had the legislature intended that such clearly mandatory language not require the invalidation of a ballot not conforming to the statutory requirements, it could have so specified as it has in other sections of the absentee voting chapter. In § 9-138, for example, which requires that the elector or an authorized agent sign and date the statement on the ballot's inner envelope, the legislature specifically provided that "[t]he failure of such applicant or such authorized agent to date such form shall not invalidate the ballot." An example of another type of saving provision employed by the legislature is found in § 9-145 which states: "No absentee ballot shall be rejected as a marked ballot unless such ballot, in the opinion of the moderator, was marked in such way for the purpose of providing a means for its identification." The absence of any type of saving provision in connection with the mailing requirements of § 9-146 (b) leads to the conclusion that these requirements are mandatory and that noncompliance with them requires the invalidation of such a ballot.

This court has previously held that the provisions of the absentee voting statute are mandatory. *Dombkowski* v. *Messier,* supra. In *Dombkowski,* we specifically concluded that the provisions of § 9-148 of the General Statutes, dealing with the handling of absentee ballots by the municipal clerk, were mandatory by reference to the mandatory language contained in an earlier version of § 9-146.[18] Though the specific language of § 9-146 has been modified since *Dombkowski,* the mandatory nature of the statute, as discussed above, remains unchanged. There is, therefore, no reason for us to disturb the holding of *Dombkowski.*

Having concluded that the mailing requirements of § 9-146(b) are mandatory, we next consider whether there has been compliance with these provisions. In *Dombkowski* v. *Messier,* supra, 209, this court stated that "where the legislature has provided mandatory requirements specifically designed to prevent fraud, at least a substantial compliance with such statutes is necessary."

Because the ballots in question were not mailed personally by the absentee voters, in accordance with § 9-146(b) the ballots should have been mailed by one of the following persons: "A licensed phy-

---

[18] At the time of *Dombkowski* v. *Messier,* 164 Conn. 204, 319 A.2d 373 (1972), § 9-146 read as follows:

"[General Statutes] Sec. 9-146. MAILING OF BALLOT BY ELECTOR. The absentee ballot shall be mailed by the elector or applicant so that it shall be received by the clerk of the municipality in which he is qualified to vote not later than six o'clock p.m. of the day prior to the day of such election, except that, when an election is to be held on Monday, the absentee ballot shall be mailed so that it shall be received by such clerk not later than twelve o'clock, noon, of the day of such election. Except as provided in section 9-156, no absentee ballot shall be cast in any municipality unless it was sent to the clerk of the municipality by mail and received by him before the time specified in this section." *Dombkowski* v. *Messier,* supra, 208 n.2.

sician, registered or practical nurse or any other person who is caring for such elector because of such elector's illness or physical disability, a member of such elector's family or, if no such person consents or is available, then a police officer, registrar of voters or deputy registrar of voters in the municipality in which such elector resides." In § 9-146(b), the legislature has provided a detailed list of those categories of persons who could be designated to mail an absentee ballot. Had the legislature intended that *any* authorized agent could mail an absentee ballot, it could have so said, as it did, for example, in § 9-138 regarding an agent's signing of the statement on the inner envelope of the ballot. By specifying particular categories of persons,[19] the legislature has mandated that ballots mailed under § 9-146(b) shall be counted only if mailed by persons who come within one of the specified categories. It is clear from the stipulation that the person who mailed the ballots in question was not one of the persons specified by the legislature.

The trial judge, however, after noting that the underlying intent of the absentee ballot law was to prevent fraud, concluded that "in the absence of a showing of fraud or connivance, the actions of *these* electors and Mrs. Corradino evidence substantial compliance with the mandatory requirements of § 9-146(b)."[20] We do not agree.

[19] We note that the legislature continues to add categories to the list. Public Acts 1981, No. 81-424, § 4 adds "justice of the peace" to the second group of categories.

[20] The trial judge found as a matter of fact that "[t]here was no fraud, intentional error, or chicanery involved in the actions of any election official" or "candidates or their agents" and that "[t]here is no evidence to support a finding that Mrs. Corradino engaged in any fraud, intentional wrongdoing or chicanery."

The trial judge's reliance upon an absence of a showing of any fraud is misplaced. Whether fraud has been committed in the handling of certain absentee ballots is irrelevant to the question of whether there has been substantial compliance with all of the mandatory provisions of the absentee voting law. *Dombkowski* v. *Messier,* supra, 207. Had the legislature chosen to do so, it could have enacted a remedial scheme under which ballots would only be invalidated upon a showing of fraud or other related irregularity. The legislature has instead enacted a regulatory scheme designed to prevent fraud as far as practicable by mandating the way in which absentee ballots are to be handled. The validity of the ballot, therefore, depends not on whether there has been fraud, but on whether there has been substantial compliance with the mandatory requirements.

Because the twenty-six absentee voters in this case did *not substantially comply* with the mandatory provisions of § 9-146(b) their votes may not be counted. While this may seem a harsh result when, as in this case, the intent of these voters is clear, it must be remembered that these voters have disfranchised themselves by not complying with § 9-146(b), about which they had been warned in the materials accompanying the ballot.[21] This case, therefore, differs from *Dombkowski* v. *Messier,* supra, in this respect because the voters in *Dombkowski* were disfranchised, not by their own actions,

---

[21] In his memorandum of decision, the trial judge seemed to rely on the questionable effectiveness of this warning when directed toward elderly, ill, or disabled electors. This concern, however, is misplaced. It is presumed by the legislature that these voters remain competent to participate in the electoral process; the courts may not presume any less.

but by the noncompliance of the municipal clerk with the requirements of § 9-148. Thus, the trial judge erred in holding that there had been substantial compliance with the requirements of § 9-146(b), because, in fact, there had been no compliance at all.

Therefore, the answer to the plaintiff's certified question of law is that the trial judge did err in finding "substantial compliance" with the mandatory requirements of § 9-146(b).

## V

### REMEDY

The plaintiff has requested that he be declared the winner of the Democratic party primary on the ground that after the invalidation of the twenty-six absentee ballots in question and the resulting correction of the returns, his vote total would exceed that of the named defendant by sixteen votes. If this case concerned an election rather than a primary, then this remedy would be available by correction of the returns. §§ 9-323, 9-324, 9-328; see *Dombkowski* v. *Messier,* supra, 207–209. There is, however, some question as to the remedy that we should order in this case.

The question of what remedy this court should consider arises because the statute applicable to the challenge of a *primary,* § 9-329a, provides remedies different from and fewer than do the statutes applicable to the challenge of an *election.* Sections 9-323, 9-324 and 9-328 all provide that a judge hearing an election challenge thereunder may: (1) order a recount of the votes, including absentee ballots, (2) order a new election, or (3) render a decision regarding the rulings of the election official or the

count of votes, such decision operating "to correct the returns." On the other hand, the primary challenge statute, § 9-329a, in its listing of remedies provides, in relevant part, that the judge may "(a) order any voting machine used at such primary to be opened and a recount made of the votes cast; (b) order a new primary held at such time as he may fix if he finds that but for the improper actions of the election official the result of such primary might have been different and that by utilizing the procedure set out in subsection (c) he would be unable to determine the result of such primary or; (c) determine the result of such primary if he finds that the improper actions of the election official prevented persons entitled to vote from voting at such primary and after allowing such persons to vote by sealed paper ballot, he finds the result of such primary will be different." Section 9-329a does not specifically provide either for the recounting of absentee ballots or for the subtraction of invalid votes, both specifically allowed under §§ 9-323, 9-324 and 9-328.

It would appear that the difference in the remedies provided for challenges to elections and those provided for primaries represents a different legislative policy as to the way in which such challenges are to be resolved. The limitation on the remedies applicable to a primary challenge suggests that the legislature intended certain disputes about primaries to be resolved with a new primary even when, as in this case, a winner could be determined under the remedies specifically applicable in election challenges. These legislative expressions should be given great weight, especially when they are based on considerations which are not properly within the judicial sphere. In this case we have

decided to employ one of the statute's remedies because of the legislature's apparent intent that such remedy be used in a case such as this.

Because of the apparent policy of the legislature that primary disputes such as the present one involving absentee ballots are to be resolved by a new primary, we have decided to order such a primary in this case. Whether this policy is appropriate, given the added expenses it generates and the delays in the election schedules it may cause, is a question we leave to the legislature. As the present statutes are written, the difference between the primary challenge statute, § 9-329a, and the statutes regarding challenges of elections, §§ 9-323, 9-324, 9-328, can be given no other meaningful construction.

## VI

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff ordering a new primary to be held forthwith, at a time to be fixed by a judge of the Superior Court, between the plaintiff and the named defendant for the Democratic party nomination for mayor of the city of West Haven.[22]

In this opinion the other judges concurred.

---

[22] We note that, pursuant to the order of a judge of the Superior Court, *O'Brien, J.*, the new primary was held on November 3, 1981, and that George Dunleavy again prevailed over Donald J. Wrinn, this time by 20 votes: 3360 to 3340.