JAMES SCHEYD ET AL. *v.* PETER BEZRUCIK ET AL.
(13299)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 24—decision released December 15, 1987

*James A. Wade,* with whom was *Ronald W. Zdrojeski,* for the appellants (petitioners).

*Daniel R. Schaefer,* assistant attorney general, with whom were *Barney Lapp* and *Henry S. Cohn,* assistant attorneys general, *Jeffrey Garfield* and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellees (respondents Julia Tashjian et al.).

*William V. Dworski* and *Lawrence J. Halloran,* with whom, on the brief, was *Michael K. Patenaude,* for the appellees (named respondents et al.).

*Edward T. Lynch, Jr.,* corporation counsel, and *Anita D. Cobb,* assistant corporation counsel, filed a brief for the appellee (respondent Richard T. Murphy).

PER CURIAM. The dispositive issue in this case is whether a challenge to the constitutionality of our minority representation statute, General Statutes § 9-167a, comes within the jurisdictional confines of General Statutes § 9-328,[1] which, under narrowly

---

[1] General Statutes § 9-167a, as amended by Public Acts 1987, No. 87-498, provides: "(a) (1) Except as provided in subdivision (2) of this subsection, the maximum number of members of any board, commission, legislative body, committee or similar body of the state or any political subdivision thereof, whether elective or appointive, who may be members of the same political party, shall be as specified in the following table:

| "COLUMN I Total Membership | COLUMN II Maximum from one Party |
|---|---|
| 3 | 2 |
| 4 | 3 |
| 5 | 4 |
| 6 | 4 |
| 7 | 5 |
| 8 | 5 |
| 9 | 6 |
| More than 9 | Two-thirds of total membership |

"(2) The provisions of this section shall not apply (A) to any such board, commission, committee or body whose members are elected wholly or partially on the basis of a geographical division of the state or political subdi-

defined circumstances, provides expedited judicial procedures for the resolution of election disputes. The

vision, (B) to a legislative body of a municipality (i) having a town meeting as its legislative body or (ii) for which the charter or a special act, on January 1, 1987, provided otherwise or (C) to the city council of an unconsolidated city within a town and the town council of such town if the town has a town council and a representative town meeting, the town charter provides for some form of minority representation in the election of members of the representative town meeting, and the city has a city council and a body having the attributes of a town meeting.

"(b) Prior to any election for or appointment to any such body, the municipal clerk, in cases of elections, and the appointing authority, in cases of appointments, shall determine the maximum number of members of any political party who may be elected or appointed to such body at such election or appointment. Such maximum number shall be determined for each political party in the following manner: From the number of members of one political party who are members of such body at the time of the election or appointment, subtract the number of members of such political party whose terms expire prior to the commencement of the terms for which such election or appointment is being held or made and subtract the balance thus arrived at from the appropriate number specified in column II of subsection (a) of this section.

"(c) In the case of any election to any such body the winner or winners shall be determined as under existing law with the following exception: The municipal clerk shall prepare a list of the candidates ranked from top to bottom according to the number of votes each receives; when the number of members of any one political party who would be elected without regard to this section exceeds the maximum number as determined under subsection (b) of this section, only the candidates of such political party with the highest number of votes up to the limit of such maximum shall be elected, and the names of the remaining candidates of such political party shall be stricken from the list. The next highest ranking candidates shall be elected up to the number of places to be filled at such election.

"(d) If an unexpired portion of a term is to be filled at the same time as a full term, the unexpired term shall be deemed to be filled before the full term for purposes of applying this section. At such time as the minority representation provisions of this section become applicable to any board, commission, committee or body, any vacancy thereafter occurring which is to be filled by appointment shall be filled by the appointment of a member of the same political party as that of the vacating member.

"(e) Nothing in this section shall be construed to repeal, modify or prohibit enactment of any general or special act or charter which provides for a greater degree of minority representation than is provided by this section.

"(f) Nothing in this section shall deprive any person who is a member of any such body on July 1, 1960, of the right to remain as a member until the expiration of this term.

case arises out of a New Britain municipal election for aldermen at large. The petitioners, James Scheyd

"(g) For the purposes of this section, a person shall be deemed to be a member of the political party on whose enrolment list his name appears on the date of his appointment to, or of his nomination as a candidate for election to, any office specified in subsection (a) of this section, provided any person who has applied for erasure or transfer of his name from an enrolment list shall be considered a member of the party from whose list he has so applied for erasure or transfer for a period of six months from the date of the filing of such application and provided further any person whose candidacy for election to an office is solely as the candidate of a party other than the party with which he is enrolled shall be deemed to be a member of the party of which he is such candidate."

General Statutes § 9-328, as amended by Public Acts 1987, No. 87-545, § 3, provides: "Any elector or candidate claiming to have been aggrieved by any ruling of any election official in connection with an election for any municipal office or a primary for justice of the peace, or any elector or candidate claiming that there has been a mistake in the count of votes cast for any such office at such election or primary, or any candidate in such an election or primary claiming that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such election or primary, may bring a complaint to any judge of the superior court for relief therefrom. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the state elections enforcement commission. If such complaint is made prior to such election or primary, such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the secretary of the state and the state elections enforcement commission. If such complaint is made subsequent to such election or primary, it shall be brought within ten days of such election or primary to any judge of the superior court, in which he shall set out the claimed errors of the election official, the claimed errors in the count or the claimed violations of said sections. Such judge shall forthwith order a hearing to be had upon such complaint, upon a day not more than five nor less than three days from the making of such order, and shall cause notice of not less than three nor more than five days to be given to any candidate or candidates whose election or nomination may be affected by the decision upon such hearing, to such election official, the secretary of the state, the state elections enforcement commission and to any other party or parties whom such judge deems proper parties thereto, of the time and place for the hearing upon such complaint. Such judge shall, on the day fixed for such hearing and without unnecessary delay, proceed to hear the parties. If sufficient reason is shown, he may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes

et al.,[2] filed an action pursuant to § 9-328 to prevent the certification of the respondents, Peter J. Bezrucik et al.,[3] as duly elected municipal aldermen. They alleged that the respondent Richard T. Murphy, the town clerk of the city of New Britain, was intending to make such a certification in reliance on the provisions of § 9-167a, which the petitioners alleged to be violative of various provisions of the state and federal constitutions. In order to invoke the special appeal procedures of General Statutes § 9-325,[4] the parties agreed upon a stip-

cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the rulings of the election official or any mistake in the count of the votes, certify the result of his finding or decision to the secretary of the state before the tenth day succeeding the conclusion of the hearing. Such judge may order a new election or primary or a change in the existing election schedule. Such certificate of such judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election officials, to the correctness of such count, and, for the purposes of this section only, such claimed violations, and shall operate to correct the returns of the moderators or presiding officers, so as to conform to such finding or decision, except that this section shall not affect the right of appeal to the supreme court and it shall not prevent such judge from reserving such questions of law for the advice of the supreme court as provided in section 9-325. Such judge may, if necessary, issue his writ of mandamus, requiring the adverse party and those under him to deliver to the complainant the appurtenances of such office, and shall cause his finding and decree to be entered on the records of the superior court in the proper judicial district."

[2] The petitioners are James Scheyd, Bert Anderson, Ralph Hedenberg, Jr., John Podbielski and Shirley Poncini, all duly nominated candidates of the Democratic party for election to the office of alderman at large for the city of New Britain.

[3] The respondents are Peter J. Bezrucik, Nora M. Johnson, Jonathan B. Scott, Paul M. Carver and Joseph Balciunas, Jr., all duly nominated candidates of the Republican party for election to the office of alderman at large for the city of New Britain; Richard T. Murphy, town clerk for the city of New Britain; Julia Tashjian, the secretary of the state of Connecticut; and the state elections enforcement commission.

[4] General Statutes § 9-325 provides: "If, upon any such hearing by a judge of the superior court, any question of law is raised which any party to the complaint claims should be reviewed by the supreme court, such judge, instead of filing the certificate of his finding or decision with the secretary

ulated finding of facts, and the trial court thereupon certified to this court its decision on five disputed issues of law. The trial court concluded that it had jurisdiction to proceed under § 9-328 but determined that, on the merits, the plaintiffs could not prevail.[5] We disagree

of the state, shall transmit the same, including therein such questions of law, together with a proper finding of facts, to the chief justice of the supreme court, who shall thereupon call a special session of said court for the purpose of an immediate hearing upon the questions of law so certified. A copy of the finding and decision so certified by the judge of the superior court, together with the decision of the supreme court, on the questions of law therein certified, shall be attested by the clerk of the supreme court, and by him transmitted to the secretary of the state forthwith. The finding and decision of the judge of the superior court, together with the decision of the supreme court on the questions of law thus certified, shall be final and conclusive upon all questions relating to errors in the rulings of the election officials and to the correctness of such count and shall operate to correct the returns of the moderators or presiding officers so as to conform to such decision of said court. Nothing in this section shall be considered as prohibiting an appeal to the supreme court from a final judgment of the superior court. The judges of the supreme court may establish rules of procedure for the speedy and inexpensive hearing of such appeals within fifteen days of such judgment of a judge of the superior court."

[5] The trial court's certification, pursuant to General Statutes §§ 9-325 and 9-328, reads as follows: "The parties having stipulated to the facts, as attached hereto, have requested the court to certify the following issues for review by the Supreme Court:

"1. Is Connecticut General Statutes Section 9-167a unconstitutional, for one or more of the following reasons:

"a. it violates the rights guaranteed to the Petitioners by Article 10, Section 1 of the Connecticut Constitution, more particularly: 'The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions.'

ANSWERED:     Yes _____     No __X__

"b. it violates the Petitioners equal protection of the law as guaranteed by the 5th and 14th Amendments to the United States Constitution laws in one or more of the following ways:

"1. By violating the one-man one-vote requirement, or

ANSWERED:     Yes _____     No __X__

"2. By impermissibly burdening the Petitioners' rights to (a) freedom of speech; (b) association; or (c) suffrage, which rights are guaranteed to

with the trial court's interpretation of § 9-328 and therefore, without reaching the merits, conclude that the case must be dismissed.

The underlying facts and applicable statutory principles are undisputed. The city of New Britain elects its fifteen aldermen in an election at large. For the aldermanic election held on November 3, 1987, the Democratic party nominated fifteen candidates, all of whom outpolled the ten Republican party candidates, the five Independent party candidates and the one petitioning candidate. Under applicable provisions of § 9-167a, no more than ten aldermen selected in an at-large election may be members of the same political party. The petitioners are the five lowest ranking Democratic nominees, who would have been elected but for § 9-167a. Conversely, the respondents are the five Republican nominees who, because they received the

them by the First and Fourteenth Amendments of the United States Constitution and Article First, Sections 1, 4, 5, 10 and 14 of the Connecticut Constitution of 1965?

    (a) Freedom of speech      (a) Freedom of speech
    (b) Association           (b) Association
    (c) Suffrage             (c) Suffrage

ANSWERED:     Yes _____     No __X__

"2. Is Section 9-167a of the Connecticut General Statutes valid as applied in this case?

ANSWERED:     Yes __X__     No _____

"3. Did the court err in granting the temporary restraining order in this case or in refusing to dissolve the same?

ANSWERED:     Yes _____     No __X__

"4. Are the petitioners guilty of laches?

ANSWERED:     Yes _____     No __X__

"5. Does the complaint state a proper cause of action under Connecticut General Statute Section 9-328 to challenge the constitutionality of Connecticut General Statute Section 9-167a?

ANSWERED:     Yes __X__     No _____

"So ORDERED:

"/s/ Spada, Judge
Spada, J.     Nov. 14, 1987"

next highest number of votes, will be deemed to have been elected by the terms of § 9-167a.

Recognizing that, in compliance with § 9-167a, the town clerk would certify the five respondents to the Secretary of the state of Connecticut as having been elected to the office of alderman, the petitioners initiated the present litigation. The sole substantive allegation in their complaint was that the town clerk proposed to implement a statute that, in their view, deprived them of fundamental state and federal constitutional rights. The trial court concluded that such a complaint stated a proper cause of action under § 9-328. We disagree.

In order to take advantage of the expedited procedures that § 9-328 prescribes for the correction of errors in municipal elections, an elector or a candidate must state one of the limited types of claims that the statute makes cognizable. Absent an allegation of a violation of a specific election statute referred to in the text of § 9-328, § 9-328 applies only when an elector or a candidate claims to have been "aggrieved by any ruling of any election official in connection with an election for any municipal office . . . or . . . [claims] that there has been a mistake in the count of votes cast for any such office at such election . . . ."

In the present case, the parties have stipulated that the petitioners were electors and candidates and that the town clerk has the status of an election official for the purpose of certifying election results to the secretary of the state. The petitioners have neither alleged a violation of one of the statutes specially referenced in § 9-328 nor do they claim that the town clerk made a "mistake" in the vote count. The parties agree, therefore, that the crucial dispute, for jurisdictional purposes under § 9-328, is whether the petitioners' constitutional challenge to § 9-167a constitutes a claim that they are "aggrieved by any ruling of any election official."

The question of what constitutes a "ruling" by an election official was addressed by this court in *Wrinn* v. *Dunleavy,* 186 Conn. 125, 440 A.2d 261 (1982). In a footnote squarely on point, we stated: "The expedited review provided by § 9-325 may be invoked to obtain review of decisions on complaints brought under §§ 9-324, 9-328, and 9-329a. It is not sufficient, however, that the plaintiff allege or even that the parties agree that the complaint is brought pursuant to one of these sections, because the review provided by § 9-325 is available only when the original complaint actually states a cause of action cognizable under §§ 9-324, 9-328, or 9-329a. Such a complaint must concern a ruling of an election official or a mistake in the count of votes. Id. A plaintiff may not use these sections to challenge a law or regulation under which the election or primary election is held by claiming aggrievement in the election official's obedience to the law. In such a case the plaintiff may well be aggrieved by the law or regulation, but he or she is not aggrieved by the election official's rulings which are in conformity with the law." Id., 134 n.10. Relying on *Wrinn* v. *Dunleavy,* we subsequently dismissed an appeal under § 9-325 of a judgment upholding the constitutionality of a local charter provision for minority representation in a complaint filed under § 9-328. *Marshall* v. *Kotecki,* (Supreme Court Docket No. 11126) (1983).

If we adhere to *Wrinn* v. *Dunleavy's* interpretation of § 9-328, the petitioners clearly cannot prevail. They offer two reasons why we should depart from this precedent. As a matter of interpretation, they claim that they were aggrieved by the town clerk's ruling, because the town clerk had to make a choice whether he would comply with § 9-167a, the minority representation statute, or with § 9-169c,[6] the statute govern-

---

[6] General Statutes § 9-169c provides: "Notwithstanding the provisions of any charter or special act to the contrary, in any town in which members of its legislative body are elected on the basis of assembly districts

ing elections at large. As a matter of policy, they maintain that a narrow construction of § 9-328 is illogical because expedited judicial review is at least as important for matters of potential constitutional significance as it is for technical violations of election rules. We are unpersuaded.

The petitioners' argument of aggrievement by the town clerk's ruling rests on a perceived incompatibility between the mandate of the minority representation statute, which permits no more than ten aldermen to be members of the same political party, and the provisions of § 1141 of the New Britain charter, as modified by § 9-169c, which permit a political party to nominate, and New Britain electors to vote for, as many as fifteen candidates for the position of alderman.[7] The petitioners maintain that the statutes put the town clerk in the position of choosing between two presumptively valid constitutional enactments and therefore require him to make a § 9-328 "ruling." We do not agree. Whatever the manner in which the city of New

and where as a result of redistricting one or more of such assembly districts are shared with another town, such members may be elected on an at-large basis without reference to such assembly districts or other political subdivisions, unless and until such town changes its charter."

[7] The parties have stipulated that, in accordance with the advice of local corporation counsel, § 1141 of the charter of the city of New Britain has been interpreted to permit the electors of New Britain to vote for fifteen aldermen on an at-large basis. Under a charter revision of § 1141 enacted by No. 204 of the 1969 Special Acts and approved by a 1969 referendum, New Britain electors were entitled to vote for "two aldermen from each assembly district within the city as defined in the general statutes and five aldermen-at-large." As a result of subsequent legislative reapportionment, the city of New Britain now shares one assembly district with the town of Plainville and another assembly district with the town of Newington. For towns in which members of the local legislative body are elected on the basis of assembly districts that, as a result of redistricting, are shared with another town, General Statutes § 9-169c provides that "members may be elected on an at-large basis . . . unless and until such town changes its charter." Section 1141 of the New Britain charter has not been amended since 1969.

Britain, guided by § 9-169c, chooses to operate the process of nominating and voting for candidates for aldermen, the outcome of such an election is governed by § 9-167a, which limits the representation of a majority party. For the purposes of § 9-328, it does not matter whether a municipality has recourse to a primary or to a general election to decide how to allocate the permissible number of aldermen to any one political party. In either case, the local election official can obey the mandate of § 9-167a. We therefore conclude that the town clerk in this case did not make a § 9-328 "ruling." Cf. *Fidelity Trust Co.* v. *Lamb,* 164 Conn. 126, 132–33, 318 A.2d 109 (1972).

The petitioners' argument of policy stands on a different footing. In essence, the petitioners urge us to reconsider the merits of our footnote in *Wrinn* v. *Dunleavy,* supra, on the ground that our construction of § 9-328 unduly narrowed a remedial statute designed to facilitate the prompt resolution of election disputes. They argue that the legislature intended to provide an expedited review not only for minor technical violations of election processes but also for serious constitutional impairment of election rights. They maintain that their claims require a speedier adjudication than they would be able to obtain through an action in quo warranto, or for a declaratory judgment, in order to avoid uncertainty about the validity of interim legislative actions by a board of aldermen whose rightful composition may be in doubt. These arguments are not, however, incontrovertible. The legislature might reasonably have opted for speedy adjudication of disputes about technical violations of election laws on the theory that identification and rectification of such mistakes is ordinarily not a matter of great complexity. Constitutional adjudication, by contrast, requires study and reflection and may therefore, as a general matter, be deemed less

appropriate for accelerated disposition. Furthermore, the respondent aldermen, once their election is certified in accordance with the mandate of § 9-167a, would have at least de facto status; *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 557–59, 78 A. 442 (1910); which would give legal effect to their public acts, done under color of law, even if they were not then officers de jure. *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 203, 491 A.2d 1058 (1985); *State* v. *Carroll,* 38 Conn. 449, 471–79 (1871).

The legislative history of § 9-328, while not extensive, supports our construction in *Wrinn* v. *Dunleavy.* In 1978, prior to our decision, the statute had been amended to narrow those who might avail themselves of its expedited procedures. The 1978 amendment, designed to conform the language of § 9-328 with that of §§ 9-324 and 9-329, deleted from the class of eligible litigants any person "claiming to have been elected" to any municipal office. This year, the legislature, in Public Acts 1987, No. 87-545, § 3, expanded the substantive claims that an aggrieved candidate may make to include alleged violations of specified statutes governing election fraud and absentee balloting. Notably, this most recent revision does not purport to include constitutional claims within the ambit of § 9-328. We take the failure of the legislature to amend § 9-328 in this regard as acquiescence in *Wrinn* v. *Dunleavy.* The legislature is presumed to be aware of the interpretation that courts have placed on existing legislation and of the implications that we will draw from its inaction. *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 123, 434 A.2d 949 (1980); *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4 (1955). Whether the remedy provided in § 9-328 is to be fur-

ther expanded is a question for the legislature to resolve. See *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 197, 523 A.2d 1301 (1987).

There is error in the trial court's decision to entertain this action and the case is remanded with direction to dismiss the complaint.