REFORM PARTY OF CONNECTICUT ET AL. *v.*
SUSAN BYSIEWICZ, SECRETARY OF THE
STATE OF CONNECTICUT, ET AL.
(SC 16383)

Heard September 18–20—officially released October 30, 2000*

* October 30, 2000, the date this opinion was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Loughlin, Fitzgerald, Kamp, Henrici, Molloy and Reed, P.C.*, for the plaintiffs.

*Richard Blumenthal*, attorney general, and *Gregory T. D'Auria*, assistant attorney general, for the named defendant.

*Law Offices of Karen Lee Torre* and *Beck and Eldergill*, for the defendant Donna Donovan.

*Opinion*

MCDONALD, C. J. This is a complaint brought by the plaintiffs, the Reform Party of Connecticut and Floyd Atchley, against the defendants, Susan Bysiewicz, the secretary of the state, and Donna Donovan, claiming that the secretary of the state improperly refused to place upon the November 7, 2000 election ballot any nominees of the Reform Party for the offices of president and vice president of the United States.

The undersigned heard this matter under the authority of General Statutes § 9-323.[1] I conclude that, for

[1] General Statutes § 9-323 provides in relevant part: "Any elector or candidate who claims that he is aggrieved by any ruling of any election official in connection with any election for presidential electors and for a senator in Congress and for representative in Congress or any of them, held in his town, or that there was a mistake in the count of the votes cast at such election for candidates for such electors, senator in Congress and representative in Congress, or any of them, at any voting district in his town, or any candidate for such an office who claims that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such election, may bring his complaint to any judge of the Supreme Court, in which he shall set out the claimed errors of such election official, the claimed errors in the count or the claimed violations of said sections. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the State Elections Enforcement Commission. If such complaint is made

## purposes of General Statutes § 9-175,[2] the presidential

prior to such election, such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. . . ."

[2] General Statutes § 9-175 provides: "(a) The electors in the several towns in the state, at the state election in 1964, and quadrennially thereafter, shall elect electors of President and Vice President of the United States, not exceeding in number the whole number of senators and representatives to which the state is then entitled in the Congress of the United States. Voting shall be conducted and the result declared, and the returns thereof made, as is provided in respect to state elections. The Secretary of the State shall, on or before the first Monday of October of the year in which such presidential electors are to be elected, transmit blank forms to the several town clerks for the return of the votes; and the lists and returns of the votes shall be made out, certified and directed according to such forms. When an election is to be held for the choice of presidential electors, if any political party has nominated candidates for President and Vice President of the United States, and presidential electors to vote for such presidential and vice presidential candidates have been nominated by a political convention of such party in this state, or in such other manner as entitles the names of such electors to be placed upon the official ballots to be used in such election, the Secretary of the State and any other official charged with the preparation of official ballots to be used in such election, in lieu of placing the names of such presidential electors on such official ballots, shall place on such official ballots a space with the words 'Presidential electors for (here insert the last name of the candidate for President, the word "and" and the last name of the candidate for Vice President)'; and a vote cast therefor shall be counted, and shall be in all respects effective, as a vote for each of the presidential electors representing such candidates for President and Vice President.

"(b) In the case of a write-in candidate for President of the United States, such candidate may register his candidacy with the Secretary of the State by submitting his name and the names of a vice presidential candidate and candidates for the office of elector in a number not exceeding the whole number of electors to which the state is then entitled. Such registration shall be on a form prescribed by the Secretary of the State, which form shall include a statement of consent to being a candidate by each proposed candidate for elector and by the candidate for Vice President. Such registration shall not include a designation of political party. A candidate for President may register at any time after January first of the election year and not later than four o'clock p.m. on the fourteenth day preceding the election at which the offices of presidential elector and vice presidential elector are being contested. If a candidate has so registered, a vote may be cast by write-in ballot for such candidate by writing in the last name of the candidate for President and the last name of the candidate for Vice President or only

and vice presidential candidates of the Reform Party of the United States are Patrick J. Buchanan and Ezola Foster, and that those candidates and the presidential electors to vote for them should appear on the November 7, 2000 Connecticut election ballot.[3]

This dispute concerns the national convention of the Reform Party of the United States held on August 10 through 13, 2000, at Long Beach, California. At the convention, factions of the party were deeply split between the candidacies of Buchanan and John Hagelin for the office of president of the United States. Challenges to the credentials of certain delegates and a fractious pre-convention national committee meeting resulted in the departure from the meeting of a minority of national convention delegates who favored Hagelin. Those leaving included a number of Connecticut delegates and Donovan, the Connecticut Reform Party chairperson. Those delegates convened in another room, and the members of the National Committee in their number

the last name of the candidate for President; such write-in ballot shall be counted, and shall be in all respects effective, as a vote for each of the presidential electors representing such candidates for President and Vice President. No person nominated for the office of President, Vice President, or presidential elector by a major or minor party or by nominating petition shall register as a write-in candidate for such office under the provisions of this section and any such registration of a write-in candidacy filed by such a person shall be void."

[3] Because § 9-323 requires that judgment be rendered expeditiously, the following order was issued September 22, 2000, with a footnote indicating that a memorandum of decision would follow. This opinion is that memorandum of decision.

"ORDER

"In accordance with General Statutes § 9-323, the secretary of the state is hereby ordered forthwith, for the November 7, 2000 election, to list the nominees for presidential electors to vote for Pat Buchanan and Ezola Foster as the nominees of the Reform Party for president and vice president of the United States. The secretary of the state is further ordered forthwith to mail to each town clerk such lists in accordance with General Statutes § 9-462.

s/Francis M. McDonald
A Justice of the Connecticut Supreme Court"

voted to remove Gerald Moan as national party chairman and to install James Mangia in that post. At the time that the convention was called and at the inception of the national committee meeting, Moan was the national chairman of the national Reform Party.

On August 13, 2000, the delegates who had left the national committee meeting held a meeting presided over by Mangia and nominated Hagelin and Nat Goldhaber for president and vice president of the United States, respectively. The remaining national convention delegates under the chairmanship of Moan proceeded with the convention and on August 13, 2000, nominated Buchanan for president and Foster for vice president.

Following these events, the Connecticut Reform Party, with Donovan presiding, met on August 27, 2000, and nominated presidential electors pledged to vote for Hagelin and Goldhaber. Donovan then submitted to the secretary of the state a certificate naming those presidential electors, together with Mangia's certification of Hagelin and Goldhaber's nomination on August 13, 2000, at the national convention.

The secretary of the state informed the Buchanan faction that the party would be required to file its certificates of nominations by September 1, 2000. Connecticut vice chairman Ernie Lacore then called a convention for August 31, 2000. At that convention, those attending first voted to remove Donovan and then replaced her with Atchley. They then nominated presidential electors pledged to vote for Buchanan and Foster. On September 1, 2000, Atchley certified to those nominations and also filed Moan's certification of Buchanan's and Foster's nominations at the August Long Beach national convention.

The secretary of the state, having received two certifications of nominees for presidential and vice presiden-

tial electors from the Reform Party, refused to place either set of nominees on the ballot.

The overriding consideration of this tribunal is to avoid engaging in deciding political questions while at the same time attempting to ensure that a national political party may present to the electorate its chosen candidates.

I

The euphemistically described "boisterous" disunity within the national Reform Party, detailed in *Reform Party of the United States* v. *Gargan*, 89 F. Sup. 2d 751 (W.D. Va. 2000), was evident at the 2000 national convention. I conclude, nevertheless, that, for purposes of General Statutes § 9-452, there was a Reform Party nominating convention in Long Beach, California, which duly nominated Buchanan and Foster for president and vice president of the United States.

Under the constitution of the national Reform Party, the national chairman is the presiding officer of a national convention. See *Reform Party of the United States* v. *Gargan*, supra, 89 F. Sup. 2d 754. I reject Donovan's argument that Moan was removed from his office by a vote of the national committee. Article XII of the constitution of the national Reform Party provides that "[t]he rules contained in the current edition of Robert's Rules of Order, Newly Revised shall govern" the national convention. The constitution further provides that the national committee serves under the national convention. Robert's Rules of Order, Newly Revised, provides that "any regularly elected officer of a permanent society can be deposed from office for cause—that is, misconduct or neglect of duty in office— as follows . . . . If . . . the bylaws provide that officers shall serve *only* a fixed term, such as 'for two

years'[1]. . . an officer can be deposed from office only by following the procedures for dealing with offenses by members outside a meeting; that is, an investigating committee must be appointed, it must prefer charges, and a formal trial must be held." (Emphasis in original.) Robert's Rules of Order, Newly Revised (1981) § 60, p. 555. There is no dispute that the anti-Buchanan faction of the national Reform Party convention did not follow these procedures.[5] Since Moan's attempted ouster as national chairman was not in compliance with those rules, he remained the presiding officer of the national convention.

The Connecticut election laws require the secretary of the state to mail to each town clerk a list of all duly elected nominees of a minor party, such as the national Reform Party, upon receipt of a certificate from the presiding officer of the nominating convention.[6] Because Moan was the presiding officer of the Reform Party national convention, his certification is controlling. I accordingly conclude that Buchanan and Foster are the nominees of the national Reform Party.

---

[1] Article VIII, § 4, of the national Reform Party constitution provides that "[e]ach National Officer's term of office shall be two years. . . ."

[5] Nor was there any evidence of a "roll call" vote of the national committee to remove Moan.

[6] General Statutes § 9-452 provides: "All minor parties nominating candidates for any elective office shall make such nominations and certify and file a list of such nominations, as required by this section, not later than the fifty-fifth day prior to the day of the election at which such candidates are to be voted for. A list of nominees in printed or typewritten form shall be certified by the presiding officer of the committee, meeting or other authority making such nomination and shall be filed by such presiding officer with the Secretary of the State, in the case of state or district office or with the clerk of the municipality, in the case of municipal office, not later than the fifty-fifth day prior to the day of the election. The clerk of such municipality shall promptly verify and correct the names on any such list filed with him, or the names of nominees forwarded to him by the Secretary of the State, in accordance with the registry list of such municipality and endorse the same as having been so verified and corrected. For purposes of this section, a list of nominations shall be deemed to be filed when it is received by the secretary or clerk, as appropriate."

Questions raised by Donovan concerning the make-up of the convention, the resolution of challenges to delegates and procedures of the convention are political questions left for the party to resolve. They may not be resolved by the courts. It is well established that, whenever possible, the internal determinations of a national political party are governed by the party and its rules and regulations, not by the intrusion of the court or the state. In *Reform Party of the United States v. Gargan,* supra, 89 F. Sup. 2d 760, the United States District Court asserted that "[c]ourts are traditionally reluctant to interfere with the internal operations of political parties. *Irish* v. *Democratic-Farmer-Labor Party of Minnesota,* 399 F.2d 119, 120 (8th Cir. 1968), citing *Lynch* v. *Torquato,* 343 F.2d 370 (3d Cir. 1965). Specifically, with regard to the credentialing of delegates the national party determines whether a state's delegates are seated at a national party convention. See *Democratic Party of United States* v. *Wisconsin,* 450 U.S. 107, 126, 101 S. Ct. 1010, 67 L. Ed. 2d 82 (1981); see also *Cousins* v. *Wigoda,* 419 U.S. 477, 489, 95 S. Ct. 541, 42 L. Ed. 2d 595 (1975) (holding that the First Amendment protected the party's right to determine the composition of state delegations). Ultimately, 'the proper forum for determining intra-party disputes as to which delegates shall be seated' is the convention itself. *O'Brien* v. *Brown,* 409 U.S. 1, 4, 92 S. Ct. 2718, 34 L. Ed. 2d 1 (1972), vacated as moot, 409 U.S. 816, 93 S. Ct. 67, 34 L. Ed. 2d 72, 73 [1972]; see also *Irish* [v. *Democratic-Farmer-Labor Party of Minnesota,* supra, 120] ('the attitude [of the courts] has been one of reluctance and of willingness to have the challenged body initially given the opportunity to attempt to reorganize itself')."

## II

Our federal constitution provides that the president and vice president of the United States are not chosen

by direct popular vote. The constitution employs an electoral college composed of electors chosen from each state according to state law. U.S. Const., art. II, § 1. In Connecticut, those electors are chosen "to vote for" the candidate nominated by their political party. General Statutes § 9-175.[7] Once selected, they are required by law to vote for those nominees. General Statutes § 9-176.[8]

The Connecticut Reform Party on August 27, 2000, nominated presidential electors to vote for Hagelin and Goldhaber, not Buchanan and Foster. Because Buchanan and Foster are the nominees of the national Reform Party, the August 27 nomination by the Connecticut Reform Party of electors to vote for Hagelin and Goldhaber was a nullity.

Donovan argues that the August 31, 2000 meeting, called by Lacore, was not a proper nominating convention for electoral college members because of lack of timely and complete notice to all Connecticut Reform Party members. She also argues that since there was no notice to her that her removal as chairperson would be sought, she remained state party chairperson. She further claims that because she did not participate in that meeting, the nomination of presidential electors at the meeting was invalid. I conclude that Donovan was not removed as chairperson at the meeting on August 31, 2000. The same procedural defects with respect to the attempted removal of the national chairman, Moan,

---

[7] See footnote 2 of this opinion for the text of § 9-175.

[8] General Statutes § 9-176 provides in relevant part: "The presidential electors shall meet at the office of the Secretary of the State at twelve o'clock, noon, on the first Monday after the second Wednesday of the December following their election and, as required by the Constitution and laws of the United States, shall cast their ballots for President and Vice President. Each such elector shall cast his ballots for the candidates under whose names he ran on the official election ballot, as provided in section 9-175. . . ."

pertain also to the attempted removal of Donovan.[9] I conclude, however, that the nomination of the presidential electoral college members at the August 31, 2000 meeting, was valid.

By its own party rules and under Connecticut law, the state party was restricted to submitting names of electors required to vote for the nominees of the national party. The Connecticut Reform Party is directly affiliated with the Reform Party of the United States. State Party Rules of Connecticut Reform Party, art. I, § 2. The rules of the Reform Party of Connecticut provide that "[t]he Presidential and Vice Presidential candidates of the Reform Party of Connecticut shall be the Reform Party of the U.S.A. candidates for President and Vice President selected at the Reform Party U.S.A. national nominating convention. To this end, the Reform Party of Connecticut shall take all necessary steps to cause the names and addresses of these candidates to be certified to the State of Connecticut as provided by Connecticut law, and to otherwise ensure that the names of these candidates appear for these offices on the general election ballot in Connecticut." State Party Rules of Connecticut Reform Party, art. IV, § 4. Section 9-175 (a) authorizes the secretary of the state to prepare a ballot for the election of presidential electors "if any political party has nominated candidates for President and Vice President of the United States, and presidential electors to vote for *such presidential and vice presidential candidates* . . . ." (Emphasis added.)

The time constraints and Donovan's actions made it necessary for Lacore to assume the function of state chairperson in an emergency; see *Reform Party of the United States* v. *Gargan*, supra, 89 F. Sup. 2d 751; and

---

[9] See also State Party Rules of Connecticut Reform Party, art. III, §§ 5 and 6.

to call a convention. At that convention, in the same manner Atchley functioned as the presiding officer and properly certified to the secretary of the state the selection of electors to vote for Buchanan and Foster. Because of the restrictions upon the state party, and the consequences of failure to follow the will of the national convention, I conclude that the secretary of the state should place those electors on the ballot for the November 7, 2000 election. To hold otherwise would be contrary to the very concept of national elections of nominees of national political parties, and would create election anarchy.